Eugene Braunstein *vs.* Theodore J. Devine & others.

Bristol.   October 28, 1957. — April 18, 1958.

Present: Wilkins, C.J., Spalding, Williams, Counihan,
& Whittemore, JJ.

*Corporation*, Stockholder, Officers and agents.  *Equity Pleading and Prac-
tice*, Plea.

The proper office of a plea in a suit in equity is to set forth some single
    fact or point the establishment of which will defeat the suit.  [412]
The mere fact that at meetings of the stockholders of a corporation a
    minority stockholder present did not vote against motions, unani-
    mously carried, to ratify action of the directors did not justify a con-

clusion that he ratified it where it appeared that the directors held a great majority of the stock, that he must have realized that negative votes by him on the motions would have been futile, and that his conduct at the meetings and subsequent conduct were consistent with a purpose to question such action. [413]

A unanimous vote by the stockholders of a close corporation present and voting at a stockholders' meeting ratifying action taken by the directors was not a bar to a suit in equity by a minority stockholder against the corporation and the directors based on such action of the directors as allegedly detrimental to the corporation where it appeared that the ratifiying vote was passed by the aid of votes of stockholders who held a great majority of the shares and were themselves directors. [414]

BILL IN EQUITY, filed in the Superior Court on February 2, 1956.

The suit was heard by *Kirk,* J., on a plea in bar.

*Thomas F. McGuire,* for the plaintiff.

*Richard K. Martin,* for the defendants.

WILLIAMS, J.  This is a suit by a minority stockholder of National Glass Company, Inc., hereinafter referred to as National, in which the corporation and its three present directors, Theodore J. Devine, Burton E. Hawkins and Beatrice M. Devine, are joined as defendants.

The case comes to us on appeal by the plaintiff from a final decree sustaining a plea in bar and dismissing the bill. Material allegations in the bill are as follows: In pursuance of a "conspiracy to enrich themselves and otherwise to further their personal advantage at the expense" of National, the defendants Theodore J. Devine (hereinafter called Devine) and Hawkins and one Larry M. Hess, directors of the corporation, entered into a written agreement on May 29, 1953, with one Sigmond Rosenblatt to purchase his controlling interest in the stock of National consisting of 91,350 shares for $299,793.75.  The purchase price was to be paid, $52,500 on execution of the agreement, $187,293.75 on or before July 15, 1953 "(the closing date under said agreement)," and the balance of $60,000 by the promissory note of the purchasers indorsed by the defendant Beatrice M. Devine, payable in forty-eight monthly instalments with interest at three per cent on the unpaid balance.

The purchasers agreed to cause National, on said closing date, to accept the promissory note of Rosenblatt in the amount of $44,000 payable in forty-eight monthly instalments with interest at the rate of three per cent on the unpaid balance in full payment for two 1952 Cadillac automobiles owned by National and the discharge of any and all obligations of Rosenblatt to National, including $38,000 owed by him on an open account, and a promissory note dated December 30, 1951, for $16,449.71. The purchasers further agreed to cause the corporation to employ Rosenblatt in an advisory capacity for three years following the said closing date, at an annual salary of $5,000, and to pay his estate the additional sum of $20,000, payable in four equal instalments of $5,000 each, beginning ninety days after his death.

On or about July 16, 1953, pursuant to this and to other agreements dated in July, 1953, Rosenblatt transferred his controlling interest in National to the three purchasers. In order to raise the necessary funds for the purchase of Rosenblatt's stock, Devine, who was treasurer of National and dominated and controlled the board of directors, caused National to borrow $125,000 from the First National Bank of Boston and used the proceeds of the loan as part payment for the stock. He also caused the corporation to borrow $40,000 from other banking institutions to be used as part payment for the stock.

The directors have approved and ratified these transactions and in so doing "did not safeguard National's interest with the care and diligence of reasonably prudent businessmen, and privately enriched themselves at the expense of National." Demand was not made on the directors to bring "action" because as they are dominated and controlled by Devine, and a majority of them participated in the wrong, demand would be futile. Nor was demand to bring "action" made on the stockholders because the stock held by members of the board of directors constituted a majority of the stock of National and demand on them would also be futile. It is stated that the defendant Beatrice M. Devine replaced Hess

as vice-president, secretary and director of National at its
annual meeting on March 18, 1954. The plaintiff prays
that the defendants be required to account for their profits
and the damages sustained by National.

A demurrer to the bill averring that it does not set forth
facts sufficient to warrant relief and that there is a want of
necessary parties, namely Larry M. Hess and Sigmond
Rosenblatt, was overruled.

The defendants filed a plea in bar. Therein it was alleged
that the plaintiff was present at the annual meetings of
stockholders of the corporation held on March 18, 1954, and
March 17, 1955. At each meeting all details of the corporate
borrowings and loans of which the plaintiff complains were
set forth fully to the stockholders both by the oral reports
of the president and treasurer and on the printed balance
sheets and profit and loss statements delivered to all stock-
holders prior to the meetings. At the 1954 meeting 9,220
shares over and above the shares of the three individual
defendants were represented of which the plaintiff owned
1,320 shares. At the 1955 meeting 11,164 shares over and
above the shares of the three individual defendants were
represented of which the plaintiff owned 2,600 shares. At
each meeting the stockholders voted unanimously that "the
stockholders adopt, ratify, and confirm all action taken and
all things done by the officers and directors of this corpora-
tion for the year just past as the same appears of record or
were taken or done in the usual course of business." The
plaintiff joined in and approved these resolutions. He did
not attend the annual meeting held in March, 1956, although
regular notice of the meeting, with copies of the financial
statements, was mailed to him seventeen days in advance
of the meeting. The defendants assert that "prescinding
from the plaintiff's concurrence" in the ratifying votes of
the stockholders he is barred by these votes from maintaining
his bill.

There was a hearing on the plea at which the printed
annual reports for the calendar years 1953, 1954 and 1955
were offered in evidence and oral testimony taken. The

evidence is reported. The trial judge voluntarily filed the following findings of fact:

At the stockholders' meeting of March, 1954, it was unanimously voted "That the stockholders adopt, ratify, and confirm all action taken and all things done by the officers and directors of this corporation for the year just past as the same appears of record or were taken or done in the usual course of business." The plaintiff was present at the meeting and "participated actively in the discussions . . . . He asked numerous questions relative to the matters referred to in paragraph five of his bill of complaint [the allegations concerning the making of the agreement of May 29, 1953]. His questions were answered in full. He made numerous motions, including a motion to enlarge the board of directors. All of his motions were voted down." He did not vote against the above vote of ratification.

He was also present at the stockholders' meeting held in March, 1955, and "again was an active participant in the discussions at the meeting. He demanded explanations of certain items contained in the published annual report" and received explanations in full from the presiding officer. "He made numerous motions, all of which were put to a vote and all of which were defeated." A motion referring to the actions of the officers and directors for the year 1954 similar to that passed at the 1954 meeting was proposed and unanimously carried. The plaintiff did not vote against it. He did not attend the annual meeting in March, 1956.

In conclusion the judge found "that the plaintiff, knowing the facts, ratified the acts now complained of." He ruled that "the plaintiff cannot maintain this suit as a matter of law" and entered a final decree whereby the plea was sustained and the bill dismissed.

The proper office of a plea is to set forth some single fact or point the establishment of which will defeat the suit. *S. Solomont & Sons Trust, Inc.* v. *New England Theatres Operating Corp.* 326 Mass. 99, 110. *Donahue* v. *Kenney,* 327 Mass. 409, 414. *Kalmus* v. *Kalmus,* 330 Mass. 41, 42.

Although in the instant plea the defendants appear to have averred both the ratification of the directors' acts by unanimous votes of the stockholders and the approval of the votes by the plaintiff, the form of the plea was not challenged and it was tried without objection. See *Reilly* v. *Selectmen of Blackstone,* 266 Mass. 503, 507. For the purpose of the hearing upon it the allegations of the bill not denied by the plea were admitted to be true. *Kalmus* v. *Kalmus,* 330 Mass. 41, 42.

From the evidence National seems to have been a so called close corporation with stock outstanding consisting of 7,656 shares of six per cent cumulative convertible preferred stock and 106,519 shares of common stock of which Sigmond Rosenblatt owned 91,350 shares. The judge appears to have based his ruling that as matter of law the plaintiff cannot maintain his suit on the finding "that the plaintiff, knowing the facts, ratified the acts now complained of." We think that this factual conclusion was not justified by the subsidiary findings or by the evidence. In the circumstances it cannot reasonably be inferred that his failure to vote indicated an assent to the action of the stockholders. He must have realized that a negative vote or vocal objection would have little or no effect on the proposed action of the stockholders. His abstention from voting could not have led the directors or the other stockholders to suppose that he acquiesced in the vote. See *Uccello* v. *Gold'n Foods, Inc.* 325 Mass. 319, 328. His subsequent course of conduct was consistent with a present and continuing purpose to question the acts of the individual defendants. At some time after the March, 1954, meeting it appears from the evidence that he instituted a suit in the Federal Court similar to the present suit. He repeated demands for explanation at the meeting of March, 1955, and finally brought the present suit in February, 1956.

The judge did not decide the second point raised by the plea, whether the ratification votes by the stockholders were a bar to the maintenance of the suit but as the facts relating to these votes have been found we may inquire whether they

are sufficient to support the judge's conclusion.  See *Reilly* v. *Selectmen of Blackstone*, 266 Mass. 503, 512; *Frost* v. *Kendall*, 320 Mass. 623, 626.

It is a settled principle relating to corporate management that ordinarily a single stockholder cannot be permitted to launch the corporation into litigation against the will of the holders of a majority of the stock acting reasonably and in good faith.  *Smith* v. *Hurd*, 12 Met. 371, 386–387.  *Dunphy* v. *Traveller Newspaper Association*, 146 Mass. 495.  *Bartlett* v. *New York, New Haven & Hartford Railroad*, 221 Mass. 530.  *Hayden* v. *Perfection Cooler Co.* 227 Mass. 589, 592. On the other hand the majority stockholders cannot condone and ratify the fraud and breach of trust of corporate officers so far as their conduct disregards the rights of the stockholders.  *Brewer* v. *Boston Theatre*, 104 Mass. 378, 395.  *Von Arnim* v. *American Tube Works*, 188 Mass. 515, 518.  *Baker* v. *Allen*, 292 Mass. 169, 173.  See *Winchell* v. *Plywood Corp.* 324 Mass. 171, 178.  The unanimous votes of ratification in the present case were passed not by an independent disinterested majority of the stockholders (see *S. Solomont & Sons Trust, Inc.* v. *New England Theatres Operating Corp.* 326 Mass. 99, 114) but, so far as appears, by the aid of the votes of the stockholders who were under attack, and who in fact held a great majority of the stock. In this situation it could not be ruled that the votes of the stockholders were a bar to the prosecution of the suit.

The final decree is reversed.  An interlocutory decree may be entered overruling the defendants' plea.  The case is to stand for further hearing.

*So ordered.*